IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| JESUS A. CHAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| ALEJANDRO MAYORKAS, Secretary, | § | |
| U.S. Department of Homeland Security | § | |
| | § | |
| Defendant. | § | JURY TRIAL DEMAND |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**INTRODUCTION**

1. Plaintiff ("Chan") files this lawsuit against his previous employer, Defendant Alejandro Mayorkas, Secretary, United Stated Department of Homeland Security, alleging discrimination and retaliation based on violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 (42 U.S.C. § 2000 et seq).

2. As alleged with greater specificity in paragraphs 8 through 63 of this Complaint, Plaintiff (over 40 years of age) complains that he was formerly employed by Defendant as Patrol Agent in Charge, Sector Intelligence Unit, GS-1869-14, with the United States Customs and Border Protection, Laredo Sector. Beginning in 2016, Plaintiff had been a participating witness in an EEO action brought by a subordinate employee. Thereafter, Defendant began retaliating against Plaintiff in the terms and conditions of his employment. In 2017, Defendant transferred Plaintiff from the Patrol Agent in Charge, Intelligence, position to a Deputy Patrol Agent in Charge of a non-intelligence posting – a demotion of responsibilities. The only initial reason

given was that there was a need for "new blood" – which was meant by Defendant and taken by Plaintiff as an age-based reference. Thereafter, Defendant raised alleged performance deficiencies as a reason for the re-assignment. Such workplace allegations were a pretext for prohibited age and retaliation-based discrimination in Plaintiff's demotion. Through this suit, Plaintiff seeks relief for violations of his rights under the law.

## JURISDICTION AND VENUE

3. This is a civil action brought pursuant 28 U.S.C. § 1331 (federal question), 42 U.S.C. §2000e-3 et seq ("Title VII retaliation"), 42 U.S.C. § 2999e-16 (applicability of Title VII to federal employment), and 29 U.S.C. § 621 et sea (Age Discrimination). This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 (jurisdiction over actions to secure civil rights extended by the United States government).

4. Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the events that gave rise to the Complaint occurred in the Southern District of Texas, specifically, Laredo, Texas, and Mr. Chan would have continued to have been employed in this position but for the discriminatory acts at issue in this case.

5. All required conditions precedent required under Title VII (42 U.S.C. § 2000e et. seq.) have been exhausted and/or performed by Plaintiff prior to the filing of this complaint: For all claims investigated by the EEO, the Charging Party is afforded ninety (90) days from his receipt of the Agency's Notice of Final Agency Action. The Agency issued its Notice on November 13, 2023, and Plaintiff Chan files his suit within the ninety (90) day period afforded by law. See Exhibit A.

## PARTIES

6. Plaintiff Jesus A. Chan is a natural person, a citizen of the United States, and a resident of Laredo, Webb County, Texas, and who was employed by Defendant.

7. The named Defendant herein is the United States Department of Homeland Security, an agency of the United States of America, through its Secretary, Honorable Alejandro Mayorkas.

## STATEMENT OF FACTS

8. Mr. Chan, Plaintiff, was a former employee of Defendant.

9. Plaintiff began his employment with Defendant on or about April 16, 1995, in the position of Border Patrol Agent.

10. Due to the wrongful actions of Defendant, Plaintiff was forced to retire from Defendant on or about August 31, 2019.

**The Duties of the PAIC – Intelligence Unit Position**

11. Mr. Chan's previously held the position of Patrol Agent in Charge (PAIC) for the Laredo Sector Intelligence Unit – a GS-14 level position

12. While PAIC Intelligence Unit, Mr. Chan held the following responsibilities – oversaw providing tactical level intelligence to Laredo Sector Border Patrol Stations, the Laredo Sector Command Staff, and Headquarter components, ensuring that intelligence information was shared with other local, state and federal intelligence offices, and, in addition, handling the customary PAIC responsibilities such as oversight of personnel, manpower, work schedules, budget, equipment, vehicles, human resources and facilities. The intelligence component made this position unique among other PAIC positions.

13. In addition, Plaintiff Chan was required to possess, and was so qualified, to have a top-secret "SCI" security clearance. Mr. Chan lost this clearance when he was demoted.

14. At the time Plaintiff occupied this position, there were only twenty (20) PAIC - Intelligence positions across the entirety of the United States Border Patrol. Therefore, there is a certain level of prestige and privilege to the PAIC – Intelligence position. PAIC Intelligence has more prestige, and is seen as a higher rank, than a Deputy PAIC of a non-intelligence station.

**Mr. Chan's prior EEO Activity and Upper Management's Knowledge**

15. On or about November 26, 2016, after previously submitting information to the EEO, Mr. Chan submitted a written declaration to the EEO regarding an EEO complaint filed by a subordinate of Mr. Chan. Mr. Chan also participated in an Office of Professional Responsibility (OPR) investigation process in which he provided similar testimony and information.

16. In such EEO declaration and subsequent testimony, Mr. Chan identified his superiors, Mr. Jason Owens (Acting Chief Patrol Agent, Laredo Sector), Mr. Mario Martinez (Chief Patrol Agent, Laredo Sector) and Mr. Scott Good (Acting Deputy Chief Patrol Agent, Laredo Sector) as the persons responsible for the adverse employment action against Plaintiff Chan's subordinate who made the EEO complaint for removal from position.

17. It was common knowledge at Laredo Sector headquarters that Mr. Chan's subordinate had filed an EEO complaint which was being investigated.

18. Immediately after Mr. Chan's 2016 involvement with EEO, and for the year following, Mr. Chan's requests for manpower to fill vacancy positions, specifically Intelligence vacancies, went unfulfilled by Mr. Jason Owens.

19. Further, on or about February 12, 2018, Mr. Chan provided supplemental responses to the EEO investigator regarding his subordinate's EEO complaint. Mr. Chan was informed by the

EEO investigator that they needed to clarify what Jason Owens testified about the matter. Therefore, by that point, upon information and belief, Mr. Owens had already been interviewed.

**The simultaneous removal of Mr. Chan and replacement with Mr. Valenzuela**

20. On October 10, 2017, Mr. Chan was approached by Mr. Mike Lata (Acting Division Chief) who instructed Mr. Chan to submit a memorandum for voluntary transfer out of his position and to the Cotulla, Texas station for a Patrol Agent in Charge (PAIC) position. The Cotulla station was a smaller border patrol station and did not involve the wider range of responsibility as Mr. Chan's then current PAIC Intelligence Unit position.

21. Mr. Lata did not allege performance issues or deficiencies as a basis for his request that Mr. Chan vacate his PAIC Intelligence Unit position. Instead, the reason given for such request is that the Agency wanted "new blood" at Mr. Chan's position.

22. Plaintiff refused the request. Subsequently, on October 19, 2017, Mr. Chan was detailed out of his position on an initial 120 day TDY which was later extended to 180 days.

23. Mr. Rene Valenzuela was placed into his PAIC Intelligence Unit position in an acting role.

24. On March 18, 2018, Mr. Chan attended a meeting with Jason Owens, Acting Chief Patrol Agent, Laredo Sector wherein Mr. Owens informed him that he was no longer the PAIC of the Intelligence Unit but was permanently reassigned as a Deputy Patrol Agent in Charge of the Laredo North Station (effective April 1, 2018), and that Rene Valenzuela would be assigned as the permanent PAIC of the Intelligence Unit.

25. Mr. Chan's re-assignment to Deputy PAIC is a subordinate position to his former PAIC position (in which he was replaced by Mr. Valenzuela). This is true not only for general matters such as PAIC meetings (i.e. senior management meetings) at which Mr. Chan was no longer able to attend, but also includes having to obey specific directives by Mr. Valenzuela (e.g. Mr. Chan had to surrender his specific work vehicle when such vehicle was requested by Mr. Valenzuela).

26. At the time period in question, Mr. Juan Benavides was the then Branch Chief for Workforce Management, and he was involved in the reassignments of Mr. Chan and Mr. Valenzuela.

27. Mr. Justin Needham was the then Acting Division Chief over Mission Readiness Operations and involved in the directed reassignments of Mr. Chan and Mr. Valenzuela.

28. Mr. Alfonso Garza was a Labor and Employee Relations specialist and was involved in Mr. Chan's reassignment of position. Mr. Garza's duties include providing guidance regarding human resources.

29. The procedure involving Plaintiff Chan's re-assignment involved a simultaneous swap of positions removing Plaintiff and replacing him with Rene Valenzuela.

30. This process of a simultaneous "swap" of positions is rare. There was no other known situation or instance of a swap such as the one involved with Mr. Chan and Mr. Valenzuela. It was an unusual situation for a memorandum to be submitted requesting a move from a Deputy PAIC position to a PAIC position where there was no vacancy involved.

31. Further, directed re-assignments at the GS-14 level (Mr. Chan's then level), are exceedingly rare and is the only instance of a "swap" at Mr. Chan's level. There were no others similar to the circumstances of Mr. Chan and Mr. Valenzuela.

32. Chief Jason Owen was the one requesting the removal of Mr. Chan. The discretion to mandate such transfer by a Chief is not exercised very often. Higher management (i.e. Mr. Owens, Scott Good and/or Mr. Mike Lata) pressed human resources when the transfer of assignments did not happen as quickly as desired. Further, the Chief (either Mr. Owens or Mr. Good) wanted this transfer to happen sooner rather than later.

**Plaintiff Chan's Demotion and Public Recognition of a Change in Rank**

33. The reassignment from Patrol Agent in Charge – Intelligence Unit to Deputy Patrol Agent in Charge Laredo North Station involved a change of duties and change of rank. Mr. Chan was removed from his position and demoted in rank. Similarly, for Mr. Valenzuela, his promotion from one GS-14 position to another GS-14 position (i.e. from Deputy PAIC to PAIC Intelligence) is a promotion in rank, and there was a public ceremony celebrating his promotion in rank.

**Defendant provided a conflicting basis for Plaintiff Chan's removal from the PAIC Intelligence position.**

34. Mr. Chan was initially informed that he should voluntarily request a transfer from the PAIC-Intelligence position because the Agency wanted "new blood". At the time of his reassignment, Mr. Chan was 48 years old. Mr. Rene Valenzuela is younger than Mr. Chan.

35. Mr. Chan's direct supervisor at the time of his reassignment was Jason Owens. Mr. Owens was the recommending official for Mr. Chan's reassignment.

36. The reason given by Mr. Owens under penalty of perjury to the EEO investigator for Mr. Chan's reassignment did not allege, or even mention, performance issues; instead, such reassignment was "as part of an effort to improve Sector operational effectiveness through diversification of management experience across enforcement components" with "[m]any

managers in the Laredo Sector…reassigned to difference areas during this time "for the same reason"

37. Mr. Brian Scott Hastings was, at the time in question, the acting Chief of the Law Enforcement Operations Directorate. Mr. Hastings approved of the reassignment recommended by Acting Chief Jason Owens. Mr. Hastings reason for the re-assignment was based on an "Issue Paper" provided by Jason Owens dated February 9, 2018, and which contained a summary of alleged performance deficiencies including, for example, failure to manage personnel, failure to support operations, and failure to conduct basic intelligence functions.

**Lack of Notice of Performance Issues**

38. Mr. Chan was never given notification of deficiencies in his performance, placed on a Performance Improvement Plan, or given an opportunity to address alleged deficiencies and improve.

39. In fact, personnel in Human Resources who were consulted by the Agency upper management regarding Mr. Chan's removal and reassignment did not see evidence of performance issues.

40. For example, Mr. Alfonso Garza, the Labor and Employee Relations specialist consulted by the Agency regarding Mr. Chan, noted that he was informed that "upper management" had lost all confidence with Mr. Chan. However, was not told why, nor was it explained to him how, management had "lost all confidence".

41. Mr. Garza was asked to evaluate options as between removal and issuing a Performance Improvement Plan ("PIP) for Mr. Chan. Mr. Garza did not recommend a PIP for several reasons: (i) Mr. Chan appeared to be knowledgeable in his job and would "beat" and pass the PIP at the end of the period, and therefore, a PIP would not have accomplished the "goal" of removing Mr.

Chan, and (ii) Mr. Garza considered the question "what exactly did Jesus Chan do to merit that statement from upper management where they had lost all confidence" but as he was not given "specifics about [Mr. Chan's] deficiencies, then it's very hard to move forward with a Performance Improvement Plan". Even though Mr. Garza was tasked with considering adverse action options for Mr. Chan, Mr. Garza did not know of performance deficiencies to assess whether it was a performance/disciplinary or conduct issues – he was never given specifics.

42. Further, until the "Issue Paper" in February 2018, Mr. Garza did not have any particulars regarding any performance issues for Mr. Chan. Regardless, for Mr. Chan, it was known "from October 2017" that the only option was going to be reassignment".

43. Similarly, Mr. Justin Needham was the Acting Division Chief over Mission Readiness Operations (a human resources position) and was involved in upper management's decision to demote Mr. Chan.

44. Mr. Needham knew Mr. Chan since 1998, and never knew Mr. Chan to be deficient in performance of any capacity. Prior to January 2018, Mr. Needham never heard from management of any deficiencies in Mr. Chan's performance. In his human resources position, Mr. Needham agrees that it is important that an employee be given notice of what the problems are and would also expect that if there was a demotion, there would either be counseling or a PIP.

45. Mr. Juan Benavides was, at the time in question, the sitting Branch Chief for workforce management and he was involved in upper management's decision to demote Mr. Chan. Mr. Benavides was not aware of any PIP or requests for PIP for Mr. Chan. Mr. Benavides needed a reason for Mr. Chan's reassignment and, as a reason, was provided the "Issue Paper".

**The Alleged Performance issues outlined in the "Issue Paper"**

46. As stated, the relevant and pertinent personnel from human resources did not know of any performance issues for Mr. Chan until the February 2018 "Issue Paper".

47. The "Issue Paper" contained a summary of performance allegations against Mr. Chan. It is based on a "30-day assessment" of Mr. Chan's Intelligence Unit beginning in October 2017. However, even before the assessment, the decision had been made to reassign Mr. Chan, as opposed to placing him on a PIP.

**The Irregularity of the "30-Day" Assessment done by Defendant against Plaintiff**

48. The person in charge of assessing, and making the recommendation for removal/reassignment, was Rene Valenzuela himself – i.e. the very person who took over Plaintiff Chan's position. In Mr. Valenzuela's memorandum, there is a recommendation that Mr. Chan be "permanently removed from his current position and reassigned"

49. From the perspective of the Agency's human resources personnel, the "30-day" assessment itself, including the manner it was conducted, was unusual, unprecedented and not the recommended procedure. Further, procedurally, if a person does an assessment, it is not that person's job to also do recommendations.

**Pretext in Defendant's Reasons**

50. The "Issue Paper" the Agency used as a basis for Mr. Chan's removal recites that "[t]hroughout FY17, the current PAIC for SIU [Mr. Chan] was instructed to "restructure SIU" in order to handle the complex and multi-faceted operational plans and objectives set forth by the Laredo Sector Chief Patrol Agent."

51. During the pendency of Mr. Chan's time as PAIC- Intelligence, Mr. Chan made numerous requests for personnel to handle the restructured needs of his department. The

Agency's human resources department personnel were involved in processing these requests to fill vacancy.

52. Mr. Chan needed personnel to man shifts to fulfill his mandate from management to "restructure" the Intelligence Unit.

53. In response to Mr. Chan's request for personnel, dozens of candidates applied and were found to be eligible and not disqualified. These candidates are reflected in "certificated of eligibiles".  However, Mr. Chan's eligible hires were rejected, and the certificates were "returned unused".

54. Specifically, after Mr. Chan's EEO involvement in November 2016, his requests for personnel went unfilled, and the "No-Selection-Return Unused" certification of eligible hires were allowed to expire, and the positions went unfulfilled.

55. Mr. Chan specifically went to Mr. Jason Owens and Mr. Scott Good regarding the need for such hires, and the response he received from both was that the positions were not going to be filled.

56. As per the Defendant's own human resources personnel, allowing multiple positions of vacancy where candidates are available to go stale does not happen very often.  Non-selections do not happen very often because it is a lot of work for the hiring center – processing for eligibility, posting announcements, and the time it takes for the applicants.

57. This non-selection happened for all of Mr. Chan's requests for personnel.  It was unusual to have this level of non-selections for vacancy slots. All of these "non-selections" were being made by Mr. Chan's superiors - approval for Mr. Chan's requests for vacancy would have been made by Mr. Jason Owens at the time.

58. Between 2014 and 2018, there were no other similar "non-selection return unused" situations happening other than those for Mr. Chan's vacancy requests. Further, Mr. Chan would not have been able to simply fill a position in one station and just move that person to another station to fill a need to fill vacancies. Mr. Chan could not simply transfer personnel from different stations because that would create a void.

59. After Mr. Chan was removed and replaced with Mr. Valenzuela, "dozens of people" were selected to fill vacancies. Thereafter, all positions in every station were being filled for Mr. Valenzuela. In fact, the first instance where persons were approved to fill needed intelligence unit border patrol agent positions were under Mr. Valenzuela, and after Mr. Chan was removed.

60. For Mr. Chan, no positions were filled for his requests for vacancy.

61. In addition, in October, 2017 (i.e. when Mr. Chan was detailed out of his position), the Intelligence Unit was only staffed at 65% of its authorized manpower needs; by September 29, 2018, (i.e. after Mr. Chan was permanently replaced by Mr. Valenzuela as PAIC – Intelligence Unit), the Intelligence Unit was staffed at 97% of its authorized manpower needs.

62. The "Issue Paper" allegedly summarizing Mr. Chan's deficiencies [and based on Mr. Rene Valenzuela's Memorandum reflecting his "30-day" assessment], does not address Mr. Chan's manpower issues or management's failure to fill the vacancies by allowing the certifications of eligibility to expire.

**63.** As a result of Defendant's wrongful actions, including the ongoing retaliation and public demotion of rank and responsibilities, Plaintiff retired from his employment. But for Defendant's actions, Plaintiff would still be employed in his position. Therefore, Plaintiff has suffered loss of wages and benefits, mental anguish and suffering, and attorneys' fees in bringing this matter.

## CAUSES OF ACTION

### Age Discrimination in Employment

64. Plaintiff re-alleges and incorporates by reference paragraphs 8 through 63 above.

65. Plaintiff is over forty (40) years old and, as such, is a member of a protected class.

66. Plaintiff suffered a material adverse employment action by being involuntarily demoted and removed from the Patrol Agent in Charge (PAIC) for the Laredo Sector Intelligence Unit.

67. Age was a determining factor in removing Plaintiff from his position as Patrol Agent in Charge for the Laredo Sector Intelligence Unit.

68. Upon information and belief, Plaintiff alleges that he was subjected to unlawful discrimination on the basis of his age.

### Retaliation

69. Plaintiff re-alleges and incorporates by reference paragraphs 8 through 63 above

70. Title VII, 42 U.S.C.A § 2000e-3 makes it an unlawful practice for a person covered by the Act(s) to discriminate against an individual "because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. The ADEA similar prohibits retaliatory conduct. 29 U.S.C. § 626(c)(1).

71. As set forth above, Defendant, through its agents, supervisors and/or employees, in an continuing course of conduct, subjected Plaintiff to retaliation and discrimination in the terms, conditions, and privileges of his employment in retaliation for him opposing and participating in the EEO investigation of what he believed to be unlawful conduct on various occasions.

72. Upon good information and belief, the persons' responsible for the adverse employment actions taken against Plaintiff were well aware of Plaintiff's protected EEO activity.

73. Defendant's retaliation is willful, intentional, and committed with malice or reckless indifference to the protected rights of Plaintiff.

74. Defendant's retaliation against Plaintiff as set out herein, constitutes an unlawful reprisal in violation of Title VII, 42 U.S.C.A. § 2000e3.

75. The actions by Defendant against Plaintiff as alleged herein were wrongful, willful, and malicious.

76. Because of the actions of Defendant, Plaintiff suffered material financial injury, emotional and mental distress, and damages all within the jurisdictional limits of this court.

## Damages

77. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered injuries and damages.

78. Plaintiff seeks compensatory damages for future pecuniary loses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loses.

79. Plaintiff seeks additional equitable relief as may be appropriate such as reinstatement, promotion, back pay, front pay, and court costs.

80. Plaintiff seeks reasonable attorney's fees and costs including reasonable expert fees.

81. Plaintiff seeks pre and post judgment interest at the maximum rate allowable by law.

82. Plaintiff seeks punitive damages to the extent Defendant acted with malice or reckless indifference.



## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Jesus A. Chan prays that Defendant be cited to appear and, that upon a trial on the merits, that all relief requested be awarded to Plaintiff, and for such other and further relief to which Plaintiff may be justly entitled.

/s/ Juan M. Gonzalez
**Juan M. Gonzalez**
Texas Bar No. 24002158
**LAW OFFICE OF JUAN M. GONZALEZ**
403 W Cypress
San Antonio, Texas 78212
(210) 587-4002 Telephone
(210) 202-5127 Fax
juangmgo@gmail.com
**Attorney for Plaintiff**
**Jesus A. Chan**

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Jesus A. Chan a/k/a
Reginald K.,[1]
Complainant,

v.

Alejandro N. Mayorkas,
Secretary,
Department of Homeland Security
(Customs and Border Protection),
Agency.

Appeal No. 2023002178

Hearing No. 451-2021-00132X

Agency No. HS-CBP-01445-2018

DECISION

On March 1, 2023, Complainant filed an appeal, pursuant to 29 C.F.R. § 1614.403(a), from the Agency's February 3, 2023 final order concerning his equal employment opportunity (EEO) complaint alleging employment discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 et seq.

BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as the Patrol Agent in Charge (PAIC), GS-1896-14, in the Laredo Sector Intelligence Unit in Laredo, Texas. Effective April 1, 2018, the Agency reassigned Complainant to the position of Deputy Patrol Agent in Charge (DPAIC), GS-1896-14, at the Agency's Laredo North Station.

On July 5, 2018, Complainant filed a formal EEO complaint alleging that the Agency discriminated against him on the bases of age (48) and in reprisal for prior protected EEO activity when, effective April 1, 2018, he was reassigned from his position of Patrol Agent in Charge, GS-1896-14, to the position of Deputy Patrol Agent in Charge.

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

EXHIBIT A

2                                     2023002178

Complainant alleged that the Acting Division Chief for the Laredo Section asked him to submit a transfer to be PAIC at a different station because management wanted "new blood" to take the Laredo Sector Intelligence Unit in a different direction. The Acting Division Chief denied making the "new blood" remark, but acknowledged the upper management was not satisfied with the work Complainant was performing. Complainant declined the offer and on October 19, 2017, the Agency detailed Complainant to the Acting Assistant PAIC of the Laredo Sector Area Team. An Acting PAIC (YOB 1971) was assigned to the Laredo Sector Intelligence Unit. The Acting PAIC conducted a 30-day review of the Laredo Sector Intelligence Unit that detailed various problems and recommended that Complainant be reassigned given his inadequate work performance.

The Deputy Chief for the Laredo Section and Complainant's supervisor received the Acting PAIC's memorandum. Based on the problems detailed in the 30-day review, the Deputy Chief submitted an issue paper requesting Complainant be reassigned to the position of Deputy PAIC of the Laredo North Station and for the Acting PAIC to be reassigned as the PAIC of the Laredo Sector Intelligence Unit. The Chief of the Law Enforcement Operations Directorate at Agency Headquarters approved both reassignments the following day, on February 10, 2018. Complainant's reassignment was effective April 1, 2018.

After its investigation into the complaint[2], the Agency provided Complainant with a copy of the report of investigation and notice of right to request a hearing before an EEOC Administrative Judge (AJ). Complainant timely requested a hearing. The AJ subsequently issued a summary judgment decision in favor of the Agency.

In the AJ's decision, the AJ concluded that the Agency provided legitimate, nondiscriminatory reasons for its actions. Complainant was reassigned due to the mismanagement of the Laredo Sector Intelligence Unit. The AJ then determined the record evidence failed to establish the Agency's actions were pretext for discrimination or reprisal. For example, despite Complainant's allegations, the AJ did not find that the Deputy Chief's testimony conflicted with the reasons in the issue paper regarding Complainant's reassignment. The issue paper discussed in detail Complainant's mismanagement of the Laredo Sector Intelligence Unit, including failure to properly record work assignments, failure to effectively manage leave time, failure to keep training records, and failure to conduct basic intelligence functions. The Deputy Chief's testimony simply condensed those deficiencies to "an effort to improve Sector operational effectiveness."

---

[2] In addition, Complainant initially raised the detail assignment to the Laredo Sector Area Team in his formal EEO complaint. The Agency issued a decision dismissing both claims. Complainant appealed only the reassignment claim. In <u>Vaughn L. v. Dep't of Homeland Sec.</u>, EEOC Appeal 2019000702 (Feb. 28, 2020), the Commission determined that Complainant had abandoned the detail assignment claim and remanded the present reassignment claim to the Agency for further processing. The EEOC Administrative Judge (AJ) later denied Complainant's request to reinstate the previously abandoned claim. Complainant raised no challenges regarding this matter on appeal.

3                                         2023002178

Furthermore, the AJ concluded that the Agency had broad discretion to set policies and carry out personnel decisions, and the Commission would not second-guess the business judgment of Agency officials regarding personnel decisions without a demonstrably discriminatory motive. As a result, the AJ concluded Complainant failed to establish by a preponderance of the evidence that he was subjected to discrimination or reprisal as alleged.

The Agency issued its final order fully adopting the AJ's decision. The instant appeal followed.

The Commission's regulations allow an AJ to grant summary judgment when he or she finds that there is no genuine issue of material fact. 29 C.F.R. § 1614.109(g). An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988). A fact is "material" if it has the potential to affect the outcome of the case. In rendering this appellate decision, we must scrutinize the AJ's legal and factual conclusions, and the Agency's final order adopting them, *de novo*. See 29 C.F.R. § 1614.405(a)(stating that a "decision on an appeal from an Agency's final action shall be based on a *de novo* review…"); see also Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO-MD-110), at Chap. 9, § VI.B. (as revised, August 5, 2015)(providing that an administrative judge's determination to issue a decision without a hearing, and the decision itself, will both be reviewed *de novo*).

In order to successfully oppose a decision by summary judgment, a complainant must identify, with specificity, facts in dispute either within the record or by producing further supporting evidence, and must further establish that such facts are material under applicable law. Such a dispute would indicate that a hearing is necessary to produce evidence to support a finding that the agency was motivated by discriminatory or retaliatory animus. Here, however, Complainant has failed to establish such a dispute. Even construing any inferences raised by the undisputed facts in favor of Complainant, a reasonable fact-finder could not find in Complainant's favor. Complainant has not presented evidence sufficient showing the Agency was motivated by unlawful discriminatory or retaliatory animus regarding his reassignment.

Upon careful review of the AJ's decision and the evidence of record, as well as the parties' arguments on appeal, we conclude that the AJ correctly determined that the preponderance of the evidence did not establish that Complainant was discriminated or retaliated against by the Agency as alleged.

Accordingly, we AFFIRM the Agency's final order adopting the AJ's decision.

<div style="text-align: right">4　　　　　　　　　　　　　　　　2023002178</div>

## STATEMENT OF RIGHTS - ON APPEAL
## RECONSIDERATION (M0920)

The Commission may, in its discretion, reconsider this appellate decision if Complainant or the Agency submits a written request that contains arguments or evidence that tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests for reconsideration must be filed with EEOC's Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision. If the party requesting reconsideration elects to file a statement or brief in support of the request, **that statement or brief must be filed together with the request for reconsideration**. A party shall have **twenty (20) calendar days** from receipt of another party's request for reconsideration within which to submit a brief or statement in opposition. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015).

Complainant should submit his or her request for reconsideration, and any statement or brief in support of his or her request, via the EEOC Public Portal, which can be found at https://publicportal.eeoc.gov/Portal/Login.aspx. Alternatively, Complainant can submit his or her request and arguments to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, via regular mail addressed to P.O. Box 77960, Washington, DC 20013, or by certified mail addressed to 131 M Street, NE, Washington, DC 20507. In the absence of a legible postmark, a complainant's request to reconsider shall be deemed timely filed if OFO receives it by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604.

An agency's request for reconsideration must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP). See 29 C.F.R. § 1614.403(g). Either party's request and/or statement or brief in opposition must also include proof of service on the other party, unless Complainant files his or her request via the EEOC Public Portal, in which case no proof of service is required.

Failure to file within the 30-day time period will result in dismissal of the party's request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. **Any supporting documentation must be submitted together with the request for reconsideration.** The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

5                                                                  2023002178

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

## RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

_____
Carlton M. Hadden, Director
Office of Federal Operations


November 13, 2023
Date